UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENDRICK BUTLER,<br><br>　　Plaintiff,<br><br>　　v.<br><br>WARDEN RANDY PFISTER, WARDEN OF OPERATIONS (F/N/U) ACOSTA, LIEUTENANT WILLIAM BROWN, SERGEANT TERRELL PORK, OFFICER JOHN DOE 1, OFFICER JOHN DOE 2, OFFICER MARCIN LES, and OFFICER ANTHONY GARANT,<br><br>　　Defendants. | Jury Demand<br><br>Case No. 1:18-CV-00049<br><br>Hon. Robert W. Gettleman |

**PLAINTIFF KENDRICK BUTLER'S RESPONSE TO
DEFENDANTS PFISTER, BROWN, PORK, AND GARANT'S
LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

Plaintiff, Kendrick Butler, by his attorneys, pursuant to Local Rule 56.1 submit the following responses to Defendants Pfister, Brown, Pork, and Garant's Local Rule 56.1 Statement of Material Facts:

**LOCAL RULE 56.1 STATEMENT OF FACTS**

**I.	The Parties**

1.	Mr. Butler # M03292 is currently in the custody of the Illinois Department of Corrections ("IDOC") at Pontiac Correctional Center. (Defendants Ex. A). Mr. Butler was previously housed at Stateville Correctional Center. (Dkt. 38 at ¶ 6).

**RESPONSE:**	Undisputed.

2.	At all times relevant to Mr. Butler's Amended Complaint, Defendant Randy Pfister was Stateville's warden. (Dkt. 38 at ¶ 7).

**RESPONSE:**	Undisputed.

3. At all times relevant to Mr. Butler's Amended Complaint, Defendants Lt. Brown, Sgt. Pork, and Officer Garant were IDOC correctional officers. (Dkt. 38 at ¶ 9).

**RESPONSE:** Undisputed.

## II. Jurisdiction and Venue

4. This court has jurisdiction pursuant to 28 U.S.C. 1331 and 1343(a)(3), and venue under 28 U.S.C. 1391(b)(2). (Dkt. 38 at 4-5).

**RESPONSE:** Undisputed.

## III. Mr. Butler's Allegations

5. Mr. Butler's Amended Complaint contains two counts: unconstitutional conditions of confinement and deliberate indifference to a serious medical need. (Dkt. 38 at 7-10).

**RESPONSE:** Undisputed.

### a. Unconstitutional Conditions of Confinement

6. Mr. Butler alleges Stateville Correctional Center did not have toilets accessible from the outdoor exercise yard (Dkt. 38 at ¶ 62), that inmates were forced to relieve themselves on the yard, which resulted in insect infestations throughout the yard (Dkt. 38 at ¶ 63), and that a lack of bathroom access created a serious risk to Mr. Butler due to his IBS. (Dkt. 38 at ¶ 64).

**RESPONSE:** Undisputed.

7. Mr. Butler alleges Mr. Butler complained about the lack of bathroom access to Defendant Pfister orally and through grievances. (Dkt. 38 at ¶ 65).

**RESPONSE:** Undisputed.

8. Mr. Butler alleges on July 8, 2017, Defendants Pork and Brown refused to let Mr. Butler access a bathroom, resulting in Mr. Butler defecating on himself. (Dkt. 38 at ¶¶ 32, 38-43, 50, and 67).

**RESPONSE:** Undisputed.

### b. Deliberate Indifference to Serious Medical Need

9. Mr. Butler alleges that after he defecated himself on July 8, 2018, he was in close proximity to human waste for several hours, suffered insect bites and stings, and was denied shower access for several days. (Dkt. 38 at ¶¶ 74-75).

**RESPONSE:** Undisputed.

10. Mr. Butler alleges that several hours after he defecated on himself, he told Defendants Garant and Pork that he defecated himself and had infected insect bites. Mr. Butler alleges he requested access to a bathroom to clean himself and access to the prison medical unit for treatment of his injuries. (Dkt. 38 at ¶ 78).

**RESPONSE:** Undisputed.

11. Mr. Butler alleges that Defendants Pork and Garant informed Mr. Butler there was nothing they could do about Mr. Butler's situation (Dkt. 38 at ¶ 79), and proceeded to verbally harass and humiliate Mr. Butler about his soiled uniform while denying him the ability to bathe or change uniforms. (Dkt. 38 at ¶ 80).

**RESPONSE:** Undisputed.

### IV. IDOC Grievance Procedure

12. The IDOC has a formal grievance procedure for inmates. (Defendants Exs. B, C).

**RESPONSE:** Disputed. Mr. Butler does not dispute that the IDOC has a formal grievance procedure for inmates. Mr. Butler disputes, to the extent that Defendants allege, that completing each and every step of this procedure is the sole means by which an inmate can be deemed to have exhausted his administrative remedies. Mr. Butler also disputes, to the extent that Defendants allege, that there is only one specific method by which an inmate can submit or file a grievance. Mr. Butler further disputes, to the extent Defendants allege, that the IDOC grievance process is employed the same way at all IDOC facilities. Finally, Mr. Butler disputes, to the extent Defendants allege, that the IDOC fully adhered to the process outlined in the Illinois Administrative Code at Stateville during the relevant time period and when reviewing Mr. Butler's grievances relevant to this litigation.

13. There are generally three steps to the grievance process. First an inmate must attempt to resolve grievances through his counselor. (Ex. C, ¶ 2). If the grievance, complaint, or issue remains unresolved, within sixty days of an incident an inmate may file a written grievance on a grievance form available in all units of his institution, and this is considered the second step of the formal grievance process. (Ex. C, ¶ 2). The facility Grievance Officer may personally interview the inmate and/or witnesses as deemed appropriate and obtain relevant documents to determine the merits of the inmate's grievance. (Ex. C, ¶ 2). Upon completion of such investigation, the Grievance Officer generates a report containing the findings of the investigation, the Grievance Officer's conclusions and, if appropriate, a recommendation for relief. (*Id.*). The

offender's grievance and the Grievance Officer's Report are then forwarded to the Chief Administrative Officer ("CAO") or the CAO's designee for review and signature. (*Id*.). The Grievance Officer's Report with the CAO's or CAO's designee's final decision is then submitted back to the offender. (*Id*.).

**RESPONSE:** Disputed. Mr. Butler does not dispute that there are numerous steps in the formal grievance process, and that the steps identified here are generally those that apply when an inmate files a formal grievance. Mr. Butler disputes that Defendants' Exhibit C (Decl. of D. Knauer) to Defendants' Rule 56.1 Statement of Material Facts, sufficiently supports the statements in this paragraph. For instance, Defendants' Exhibit C does not state whether Ms. Knauer searched, reviewed, or otherwise evaluated whether Mr. Butler submitted grievances to his counselor, or whether his counselor responded at all, much less in such a manner so as to meet his or her obligations under the IDOC policy described by Ms. Knauer and as codified in the Illinois Administrative Code. (Mr. Butler's Ex. B, Ill. Admin. Code). If Mr. Butler's counselor reviewed and responded to Mr. Butler's grievances, Mr. Butler could have formally submitted his grievances to the Grievance Officer, but Ms. Knauer's declaration omits any reference whatsoever to any action taken by Mr. Butler's counselor related to the grievances in question.

Mr. Butler further states that Defendants' Exhibit C fails to demonstrate that Ms. Knauer searched, reviewed, or otherwise evaluated whether Mr. Butler submitted grievances to the Grievance Officer, or what steps the Grievance Officer took with respect to Mr. Butler's grievances, including, but not limited to, whether the Grievance Officer reviewed the grievances and submitted the grievances, his or her reports, or his or her conclusions to the CAO, pursuant to the Illinois Administrative Code. (Mr. Butler's Ex. B, Ill. Admin. Code). Finally, Mr. Butler further states that Ms. Knauer's declaration fails to demonstrate that she searched, reviewed, or otherwise evaluated whether the CAO ever received any reports or conclusions from the Grievance Officer, reviewed any such report or conclusions, or submitted to Mr. Butler any reports, conclusions,

decisions, or other documentation, as is required by the Illinois Administrative Code. (Mr. Butler's Ex. B, Ill. Admin. Code).

14. As a final step, if the inmate disagrees with the CAO's or CAO designee's decision, he may appeal in writing to the Director of the IDOC by submitting the Grievance Officer's report and CAO's decision. (Ex. C at ¶ 3). The Administrative Review Board ("ARB"), as the Director's designee, reviews the appeal and first determines whether the inmate's grievance can be handled without the necessity of a hearing. (Ex. C at ¶ 3). If so, the inmate is so advised. (*Id.*). Other matters are scheduled for an ARB hearing involving an interview of the grieving inmate, examining relevant documents and, at the ARB's discretion, calling witnesses. (*Id.*). The ARB submits a written report of its findings and recommendations to the Director or designee, who reviews the report and makes a final determination on the grievance. (*Id.*). A copy of the ARB's report and the Director's final decision are sent to the inmate who filed the grievance. (*Id.*). The originals of these documents are maintained in the ARB files pursuant to Department Rule 504F: Grievance Procedures for Committed Persons, which provides for no further means for review beyond this step. (*Id.*).

**RESPONSE:** Disputed. Mr. Butler does not dispute that there are numerous steps in the formal grievance process, and that the steps identified here are generally those that apply when an inmate files a formal grievance. Mr. Butler disputes this statement to the extent that it alleges that an inmate has any obligation or ability to appeal if he does not receive a CAO report and decision related to his grievance.

Mr. Butler further disputes that Exhibit C sufficiently supports the statements in this paragraph. Specifically, Mr. Butler disputes that Exhibit C sufficiently demonstrates that Ms. Knauer adequately searched, reviewed, or otherwise evaluated whether Mr. Butler appealed to the ARB his July 2017 grievances describing the July 8, 2017 incident in the recreation yard. In addition, Exhibit C states that Ms. Knauer found one grievance that Mr. Butler originally filed on February 22, 2018 about prison conditions, specifically relating to a lack of hot water in his unit. Her declaration indicates that the ARB received Mr. Butler's appeal of this February 22, 2018 grievance on June 8, 2018. Ms. Knauer, however, failed to identify a separate grievance that Mr. Butler filed with the Grievance Officer on May 5, 2017, and subsequently appealed to the ARB, relating to the heat in his living unit. The ARB report on the May 5, 2017 grievance shows that the

5

ARB received Mr. Butler's appeal on July 23, 2017. (Mr. Butler's Ex. F, ARB Grievance Log, and Ex. G, May Grievance). Although Ms. Knauer personally dismissed Mr. Butler's appeal of his May 5, 2017 grievance in her capacity as ARB Chairperson on September 1, 2017, she did not identify it in her declaration. (Mr. Butler's Ex. F, ARB Grievance Log, and Ex. G, May Grievance).

15. In an emergency situation, an inmate may request a grievance be reviewed on an expedited basis by submitting the grievance directly to the CAO rather than a counselor or Grievance Officer. (Ex. C, ¶ 5). If the CAO determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the grievance may be handled on an emergency basis. (*Id*.). If the CAO determines that the grievance does not warrant emergency review or processing, the inmate must resubmit the grievance in accordance with the regular grievance process as described above. (*Id*.).

**RESPONSE:** Disputed. Mr. Butler does not dispute that the formal grievance process permits inmates, under certain circumstances, to submit grievances directly to the CAO, and that the CAO may handle those grievances on an emergency basis. Mr. Butler disputes this statement to the extent it alleges that the CAO deemed any of his grievances as not warranting an emergency review, or that the CAO or any other IDOC personnel fulfilled their duties under the Illinois Administrative Code to return such grievances or any other grievances to Mr. Butler after his grievances were reviewed. (Mr. Butler's Ex. B, Ill. Admin. Code). Mr. Butler further disputes this statement to the extent it alleges that he had an obligation to resubmit any grievance.

16. Certain issues may be addressed directly to the ARB, rather than first through a counselor or Grievance Officer. (Defendants Ex. C at ¶ 4). These issues are limited to:

   a. Decisions involving the involuntary administration of psychotropic medication;
   b. Decisions regarding protective custody placement, including continued placement in or release from protective custody;
   c. Decisions regarding disciplinary proceedings which were made at a facility other than the facility where the inmate is currently assigned; and
   d. Other issues except personal property issues which pertain to a facility other than the facility where the inmate is currently assigned.

(Ex. C, ¶ 4).

**RESPONSE:** Disputed. Mr. Butler disputes, to the extent alleged, that the ARB can dismiss improperly filed grievances without informing the inmate that the ARB has decided to dismiss the grievance. Mr. Butler states that, pursuant to IDOC Administrative Directive, the ARB must return to the inmate any grievances it determines were submitted improperly or require additional documentation. (Mr. Butler's Ex. D, IDOC Admin. Dir. 04-01-115).

17. Grievances that can be addressed directly to the ARB are then handled by the ARB according to the aforementioned grievance process. (Defendants Ex. C at ¶ 4).

**RESPONSE:** Disputed. Mr. Butler disputes, to the extent alleged, that Defendants have shown that Mr. Butler was provided an adequate opportunity to appeal the CAO's decision, to the extent that the CAO made any decision with respect to Mr. Butler's grievances. Mr. Butler disputes, to the extent alleged, that his grievances were actually reviewed by the ARB.

18. Mr. Butler filed an emergency grievance on February 22, 2018 related to lack of hot water in cell W-306. (Defendants Ex. C at ¶ 8). On March 20, 2018, the grievance officer denied the grievance because Mr. Butler no longer resided in cell W-306. (*Id.*). On July 5, 2018, ARB Chairperson Debbie Knauer responded to the Mr. Butler's appeal of the grievance officer's decision and found the grievance to be moot due to Mr. Butler no longer residing in cell W-306. (*Id.*).

**RESPONSE:** Undisputed.

19. Mr. Butler's February 22, 2018 grievance did not mention any other allegations regarding conditions of confinement, including a lack of bathroom access on the yard, the presence of insects, any instance of Mr. Butler being refused access to a bathroom. (Defendants Ex. C at ¶ 9).

**RESPONSE:** Undisputed.

20. Mr. Butler did not file or appeal any other grievances regarding conditions of confinement with the ARB. (Defendants Ex. C at ¶ 10).

**RESPONSE:** Disputed. The ARB Grievance Log, produced by the IDOC, demonstrates that Mr. Butler filed a grievance regarding his conditions of confinement on May 5, 2017, which was received and reviewed by his counselor on May 18, 2017. (Mr. Butler's Ex. G, May Grievance). Unsatisfied with his counselor's response, Mr. Butler submitted the grievance to

7

the Grievance Officer, who received it on June 14, 2017 and reviewed it on June 15, 2017. (Mr. Butler's Ex. G, May Grievance). Upon receipt of the CAO's decision, Mr. Butler then submitted the grievance and the corresponding paperwork to the ARB as a grievance appeal. (Mr. Butler's Ex. G, May Grievance). The ARB received Mr. Butler's grievance appeal on June, 23, 2017, and reviewed it on September 9, 2017. (Mr. Butler's Ex. G, May Grievance). The ARB Grievance Log, produced by the IDOC, identifies the dates corresponding to Mr. Butler's filing and ARB's review of the May 5, 2017 grievance. (Mr. Butler's Ex. F, ARB Grievance Log).

Additionally, Mr. Butler submitted at least two separate grievances about prison conditions specifically relating to the July 8, 2017 incident in the recreation yard. Mr. Butler filed these grievances with the IDOC on July 8, 2017 and July 9, 2017, respectively. Mr. Butler did not receive a response from the IDOC or the ARB about either of these grievances about the July 8, 2017 incident on the recreation yard. (Mr. Butler's Ex. A (Mr. Butler's Affidavit)).

The IDOC's own produced documents confirm that Mr. Butler filed these grievances. (Mr. Butler's Ex. E, IDOC Grievance Log). In fact, the IDOC Grievance Log indicates that Mr. Butler filed a "RECREATION" grievance on July 8, 2017 that the IDOC received on July 10, 2017. (Mr. Butler's Ex. E, IDOC Grievance Log). The IDOC Grievance Log also shows that Mr. Butler filed a separate "CONDITIONS" grievance on July 9, 2017 that the IDOC received on July 10, 2017. (Mr. Butler's Ex. E, IDOC Grievance Log). Mr. Butler did not receive from the CAO a decision, report, or any other documentation related to either of these grievances. (Mr. Butler's Ex. A (Mr. Butler's Affidavit)).

In any event, Mr. Butler disputes that Ms. Knauer performed an adequate review of the grievance documents and files relating to Mr. Butler's grievance file, general, or the July 8, 2017 incident in the recreation yard, specifically. Ms. Knauer's declaration fails to identify the IDOC

and ARB Grievance Logs (Mr. Butler's Exs. E, F), and does not explain the steps Ms. Knauer used when searching for or reviewing documents related to Mr. Butler's grievances.

21. Mr. Butler did not file or appeal any grievances regarding a denial medical attention for insect bites or stings, lack of access to a clean uniform, lack of access to a shower, or any other matters related to the events alleged to have occurred on July 8, 2017 with the ARB. (Defendants Ex. C at ¶ 10).

**RESPONSE:** Disputed. Mr. Butler disputes this statement to the extent that it assumes Mr. Butler could have filed an appeal with the ARB regarding these events and conditions. Mr. Butler filed a "RECREATION" grievance on July 8, 2017 about the events and conditions alleged in Mr. Butler's First Amended Complaint, which was received by the IDOC on July 10, 2017. (Mr. Butler's Ex. E, IDOC Grievance Log). Additionally, Mr. Butler filed a "CONDITIONS" grievance on July 9, 2017 about the incident, which was received by the IDOC on July 10, 2017. (Mr. Butler's Ex. E, IDOC Grievance Log). Mr. Butler did not receive a response from the IDOC or the ARB about either of these grievances. (Mr. Butler's Ex. A (Mr. Butler's Affidavit)).

The IDOC has not produced, nor did Ms. Knauer identify in her declaration, any record, documentation, or evidence that that the CAO returned Mr. Butler's grievances to him or provided to Mr. Butler a decision or report regarding his grievances. Additionally, Ms. Knauer's declaration fails to identify the IDOC and ARB Grievance Logs showing that Mr. Butler filed grievances on July 8, 2017 and July 9, 2017 (Mr. Butler's Exs. E, F), and does not explain the steps Ms. Knauer used when searching for or reviewing documents related to Mr. Butler's grievances. In any event, Mr. Butler disputes that Ms. Knauer performed an adequate review of the grievance documents and files relating to Mr. Butler or the July 8, 2017 incident.

Dated: March 22, 2019

Respectfully submitted,

KENDRICK BUTLER

By: /s/ Reid J. Schar

Reid J. Schar (Ill. Bar No. 6243821)
Aaron J. Hersh (Ill. Bar No. 6313035)
E.K. McWilliams (Ill. Bar No. 6316830)
Jing Xun Quek (Ill. Bar No. 6327466)
P A Done Thushanthi Appuhamy (Ill. Bar No. 6330693)
Philip B. Sailer (Ill. Bar No. 6330378)

Jenner & Block LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 923-2629
Facsimile: (312) 527-0484
Email: rschar@jenner.com

*Counsel for Plaintiff Kendrick Butler*